Good morning, Your Honors. Greg May for Plaintiff and Appellant Abdullah Bayanooni. Are you doing this, are you pro bono on this? Yes, Your Honor. Thank you for doing that. My pleasure. There are, as the Court knows, three main issues on the appeal. The first, well, first I'd like to say that the statement of each in the appellee's brief presumes the answer and incorporates it into the very statement. And I'll go through those as we go. But first, on the issue of immunity, this is not a recasting of the claim, as appellees assert, indeed, again, in their issues presented in which they ask. Well, the only way you can prevail on that is you have to fall within false imprisonment, right? That's right, Your Honor. And that's raised for the first time in appeal, correct? The fact that it constituted false imprisonment or the interpretation of the underlying facts that it constituted false imprisonment is raised for the first time. So why shouldn't waiver be the answer to that? I mean, we, you know, a lot of times good arguments can, and I realize that you're stepping into this later, you weren't trial counsel, but that pretty much appellate 101 is you can't raise things for the first time on appeal. And no harm in trying, but why shouldn't waiver apply here? Well, because the concerns on the rule against waiver really aren't implicated very strongly at all, if at all, here. Obviously, the court's decision not to hear an argument is not a jurisdictional issue. It's just a discretionary one. And the reasons for the rule of waiver are that to prevent sandbagging of the opponent, to ensure adequate development of the facts. And here, the facts that were in dispute were always, from the very beginning of the case, whether the officer is forced by an UNI to attend the field show-up. He uses that language in his negligence claim in the Third Amendment complaint. He uses the same language in his intentional infliction of emotional distress claim. He alleges that he was forced to go along. So defendants were always aware that the theory was that he was forced to go with the officers to the field show-up. And therefore, there's no inadequate development of the facts. Everybody's discovery was directed right at that issue. The arguments were directed at the underlying facts of how they got by. Well, if the jury had believed that the officers forced Mr. Bainumi to the scene, wouldn't your client have prevailed? Well, that was never tried, Your Honor, because the State law claims were knocked out on the summary judgment motion. But wasn't there testimony to that? And then there was – I mean, he testified that they – he still testified to that, didn't he, at the trial? Oh, I see what you're saying. And the officers testified differently. And then they were – and then there was the instruction on indifference that was given. And if – under his whole theory of the case, it seems to me, if the jury had believed that, they would have found for him. Well, that relates to our argument on the instruction. The instruction was misleading enough that the jury's answer to the first question in the directed verdict really doesn't tell us on what basis they decided it. Well, if the – was the instruction was – let's talk about how this – the instruction was not an incorrect statement of the law, was it? It was not incorrect. It was misleading. All right. And then the court gave you – not you, but appellant – an opportunity to propose something else to possibly clear up any part that was confusing, right? Mr. Viannoni's attorney asked the court to use the original instruction. Right. Well, but then also there was some other – did you want to submit anything else to the jury? Did you want to clear things up? And didn't Mr. Viannoni's lawyer – trial lawyer say, well, that would just be more confusing? He did say that he thought that the appropriate instruction was the original instruction, not as amended and then add something else to clear it up. In other words, his argument was, why try to clear up confusion when we can just excise the language that's proposed and avoid the confusion entirely. But the court didn't think that the original – that what Mr. Viannoni's trial counsel wanted, didn't think that was a correct statement of the law, correct? No, the court found the original instruction a correct statement of the law. The court agreed with the city's lawyer that the additional sentence on reasonableness was a further explanation. I don't think the court found any problem with the original instruction being a correct statement of the law. We're talking about the deliberate indifference claim, right? Yes, Your Honor. And a defendant cannot be held liable for deliberate indifference if he is just merely negligent. True? That's true. And that's what the instruction says. It says that if you're a lawyer – Well, a defendant cannot be held liable if he was merely negligent. Well, it actually says if he is merely negligent or did not act with reasonable care. Well, what's wrong with that? Isn't that correct? Because it doesn't adequately explain the difference to the jury between a subjective standard, which is the deliberate indifference standard and what was actually in the officer's minds, and an objective standard, which is what would a reasonable person do in that position. What the instruction invited the jury to do was, once they found that the officer's conduct was unreasonable, to stop right there. It was unreasonable. There's no liability for unreasonable conduct, and, therefore, we're not going to look at their subjective state of mind. The Caballero case points out that state of mind is an exceptionally difficult thing to prove at trial, and an error in an instruction on the state of mind for that reason is subject to very strict scrutiny. I'd also point out that the error here is magnified rather than mitigated by the closing arguments of counsel. The – one of the arguments of the city's attorney in his closing argument is that the statement was, quote, that for the jury to find liability, they must find that they, the officers, quote, intentionally did it so he'd be hurt. And that isn't the standard. The standard of deliberate indifference is that they knew there was a danger, and they put him into danger anyway. Was that objected to? I don't think there was an actual objection to that statement in the closing argument. I'm merely saying that with – when you put that argument and you put the jury instruction together, what it could lead the jury to say is, well, they didn't do it so he'd be hurt. So this was merely unreasonable conduct, and, therefore, there can't be any liability. And, again, they never quite reached the issue of whether they placed Bainuni in danger, knowing that the danger was there and disregarding it. The other argument offered by the city on the jury instruction is that the directed verdict required the jury to consider deliberate indifference, which is to get around our But the problem with that rebuttal from the city is that the jury could have incorporated that last sentence on reasonableness into the definition of deliberate indifference and found that there was no deliberate indifference here because it was merely – it was unreasonable conduct. Again, they cite it's unreasonable, and they don't bother to go past that point and look at the subjective intent of the officers. I'd like to move on to the evidentiary error that we assert, and that is the sufficiency of the shooting investigation. The proceedings below, unfortunately, were plagued by the court's inability to recognize the actual relevance that Bainuni asserted for the inadequacy of the investigation. Well, okay, your standard of review on this is abuse of discretion, correct? Yes. Which is the hardest rock to push uphill in appellate advocacy. And the court does give some reasons saying why it wasn't relevant and that it would have essentially weighed the probative versus the prejudicial and also weighed the time issues in terms of creating a mini trial within a bigger trial. And so what was wrong, what was wrong that the court said? Because it would seem to me that, I mean, abuse of discretion, it's not – I don't see anything wrong with the reasons that were given. Maybe I wouldn't have decided it the same way. And if the other side was offering – you know, on abuse of discretion, a lot of times you would affirm either way. That's the – even though you wouldn't necessarily do it that way. And so that's the problem I'm having with that argument. I understand the abuse of discretion standard of review. The reason the court abuses discretion here is that it decided the evidence was irrelevant to a case that Bainuni was not even bringing. The court determined relevance in the context of a claim – of a 1983 claim based on conspiracy. And there are cases out there that allow 1983 liability where State actors actually conspire to cover up something so that the plaintiff never gets a chance to assert a legitimate claim. The conspiracy itself, in other words, comprises the conduct that imposes liability under 1983. Bainuni wasn't stating that here. All Bainuni was saying is that after the fact, after the field show-up, the officers really didn't even try to investigate the shooting because they were afraid that if they found out that the shooting was related to the field show-up, that would somehow impact their liability on the field show-up. In other words, it's a consciousness of guilt sort of relevance. And because the court misconstrued the claim as liability for conspiracy instead of relevant to the officer's consciousness of guilt, that's why it determined it was irrelevant and that's why it's an abuse of discretion. What would Mr. Dotson have said about the investigation specifically? I know generally he would have said it was a sloppy investigation, but what specifically? Well, I can't remember all seven points he was going to bring up, but he was very specific about inadequacies in the investigation, things that were missing from the file that should be there, natural course of the investigation that would have taken place that he saw no evidence of in the record. And at trial, Bainuni's lawyer was not allowed to ask her at all about the investigation, whereas the city's lawyer said there was nothing in the investigation to tip you off to who did the shooting. We objected to that question. The court overruled the objection, and the officer said no, there was nothing to tell us who did the shooting. Yet Bainuni's lawyer was not allowed to inquire into that, wasn't allowed to inquire about the scope of the investigation, couldn't determine the degree of involvement of the officers at the field show-up, wasn't able to explore this consciousness of guilt evidence at all. You've got about two minutes. Did you want to save some time for rebuttal? Yes, Your Honor, thank you. Thanks, Mr. May. Good morning. Good morning, Your Honors. Amy Field for the appellees. I think that Appellant has a really tough burden here to meet, and he has not come anywhere close to meeting it. In terms of the trial errors, there was no abusive discretion either on the evidentiary issue or on the instructional issue. And I think there was a clear waiver of the issue on the summary judgment on the false imprisonment. Let me ask you, Ms. Field. I'm with you when it comes to the instruction and with the summary judgment on the indemnity. I'm bothered by the evidentiary ruling. Bainuni had one version of what happened. The police officers had a different version. Their theory was that after the shooting, they didn't exactly break their necks to try to find out what would have reflected badly on the police department. I'm having a hard time seeing why that isn't relevant, given the two stories that were told, that they pulled their punches with the investigation. Well, I think to begin with, there was no offer of proof that the officers that were involved in the field show up in the investigation of the robbery were in any way involved in the investigation of the shooting. That's not the point they were trying to make. The point they were trying to make is they didn't want the investigators investigating the shooting to uncover something that would reflect badly on the first officers. That was the point of what they were getting at. That's why they didn't go and investigate the way they normally would. I understand that, Your Honor. And I'm just having a hard time seeing the connection there between what officers a week later did in investigating the shooting, how that connects up to what the officers that conducted the field show up did a couple of days earlier. I mean, the issue at trial was what these officers did and whether they placed Mr. knowingly placed Mr. Bayouni in harm's way. Mr. Bayouni says they forced him to go and get out of the car. The officer said they didn't do that. Now what they're saying is the reason that we, that the police, Los Angeles Police Department, didn't do a vigorous investigation of the shooting is it would have basically shown what Mr. Bayouni said happened was true and that the officers weren't telling the truth. That's what the relevance of this is. I think Mr. Bayouni is claiming that the investigation would have uncovered that there was a relationship between the shooting and the robberies. And I don't think that that's unreasonable for him to think that possibly happened, that it was fellow gang members that shot him after he participated in the field show up. But that doesn't tend to prove that the officers at the field show up did what he claimed they did, that they forced him out of the car and made him stand face-to-face with the gang members and make their IDs in that manner. And that was the story that was clearly rejected by the jury. And I guess, again, if we're going back to what the standard is. It was rejected by the jury in part because the evidence didn't come in. Well, I guess if we're going back to an abuse of discretion standard, I think that Plaintiff would have had to make a better offer of proof that he had uncovered something in discovery to show that Detective Rosenkild in some way was in cahoots with the officers at the field show up, and there was just nothing tending to show that. And a claim that she had, after the fact, covered it up, as the trial court said, was just premature. I think it was just such a far-fetched theory that the court was in its discretion not to kind of go down that path and hold a mini-trial on a claim that was premature when he hadn't connected it up. I don't know what you mean by premature. Well, she had ruled that any claim that Officer Rosenkild had engaged in a cover-up was premature, that he would have to have failed in his 1983 14th Amendment claim against the officers before this claim matured. And that's what she said in the summary judgment. And I think that in terms of evidence showing what the officers did at the field show up, it was just too remote. It was just too ‑‑ it was lacking any probative value to, you know, to allow this mini-trial on this separate issue. I think they would have had to have connected up the two events a little bit more with an offer of proof. But what exactly was the offer of proof? Maybe that's the ‑‑ Well, I think ‑‑ I don't remember the specifics of what their expert was going to say, but it was just kind of you should have included this statement in your report. You should have explored this. But it was nothing to show that you should have ‑‑ had you interviewed these officers, you would have seen that Mr. Biannini was telling the truth, that he, you know, was ordered out of the police car and made to stand face-to-face with the suspects as he claimed he did. Where's the offer of proof in the record? I think the offer of proof was in that supplemental pleading that the plaintiff filed in terms of what he thought he was going to say at trial. And it was very vague. It was very slim. It was just kind of more, you know, I would have done the investigation this way. I think she could have explored this. I think she could have explored that. But there were no specifics that would have shown what these officers did that would have a tendency and reason to prove that what Mr. Biannini was claiming at trial was in fact correct and supported his claim. Do I understand that Dotson, Officer Dotson, was sworn and he testified, but his testimony is not in the record? No, I'm sorry, Your Honor. And then we have a stipulated fax that were read to the jury. As to his investigation, is that right? Are you talking about the plaintiff's police practices expert? Well, I'm talking about Dotson, Officer Dotson's. The testimony, and that isn't in the record why we don't know. But then there were stipulated fax that were read to the jury to cover that area. I'm not recalling what fax you're referring to. I'm sorry. No, I don't mean to misdirect you here. So go ahead. Well, I guess I would say, you know, abusive discretion is a pretty hard standard to meet. This was a very long trial. Mr. Biannini got to get out his side of the story. He was unable to show how if his police practices expert had been able to testify as to additional things Detective Rosenkild could have done in her investigating of the shooting, how that would have changed things, how that would have supported his story, that he had ample opportunity to tell. He didn't connect up the two pieces of evidence, I don't think, enough to show an abusive discretion. And this was a long trial. He got to tell his story, and it was just quickly rejected by the jury. Well, you keep saying that, but his argument is, well, you didn't let him put on Mr. Dotson, so. Mr. Dotson's testimony really didn't add anything to his story. Mr. Dotson's testimony was just that she could have done more to pursue who had shot him, but it wasn't testimony to show that had she investigated this more thoroughly, it would have supported Mr. Biannini's claim that the field choke was done in the manner he testified to. There was no evidence of that. None offered, and he had nothing to say about that. Anything else? Ms. Field, anything else? No. Okay. Thanks so much. Mr. May, back to you. You get the last word. Thank you, Your Honor. Very quickly, I'd refer the Court to pages 571 through 578 of the excerpts of record. These pages of detailed opinion that Dr. Dotson is ready to offer is the offer of proof. They are summarized quite briefly at pages 18 and 19 of our opening brief, and I'll just give the brief summary since I have so little time left. The investigations were so poorly documented that they were, quote, unusable, unquote, for pursuing a criminal prosecution. That there was an absence of any indication in the file. The police followed up on things like the suspect's gang affiliation. That the report of the May 19 robbery omitted the assault that Biannini reported. I'm just going to go through those three because I'm quickly running out of time. The Court asked in the offer of proof, the city's attorney responded that, well, the offer of proof should have been that we would find something out through questioning the investigating officer further. We would have found some connection between the shooting and the robberies. And the point of the argument is it doesn't matter what it would have shown. What matters is that the investigation wasn't done. It's the failure to investigate aggressively or even competently in this case that raises the inference of guilt, of consciousness of guilt. So the actual results don't matter to the argument. It's the fact that the officer did not investigate. The Court's characterization of the claim as premature again demonstrates that it was looking at the wrong claim. It was premature because there was no conspiracy that had prevented Biannini from bringing his claim. That's why the Court found it premature. And again, demonstrating that it was looking at the case in the wrong way. I'm out of time. If the Court has any last questions. Roberts. Thank you very much, Mr. May. Ms. Field, thank you to the case just argued and submitted. Mr. May, may I also add my thanks for taking this case on an appointment basis. Thank you. Thank you.
judges: Silverman, Callahan, Mills